[No. 48974–2. En Banc. May 12, 1983.]

THE STATE OF WASHINGTON, *Petitioner,* v. LEUMAL
HENTZ, *Respondent.*

*Don Herron, Prosecuting Attorney, Michael R. Johnson, Senior Deputy,* and *Chris Quinn–Brintnall, Deputy,* for petitioner.

*Scott A. Candoo,* for respondent.

DIMMICK, J.—Leumal Hentz was convicted of rape in the first degree, robbery in the first degree, intimidating a witness, kidnapping in the second degree, and taking a motor vehicle without permission. The Court of Appeals affirmed all convictions except rape. Both Hentz and the State filed petitions for review. Since we granted only the State's petition, the sole issue before us is the propriety of the conviction for rape in the first degree when an actual gun may not have been used. We reverse the Court of Appeals and hold, under the facts of this case, the conviction was proper.

## I

The five convictions arose from two separate incidents. The rape, robbery and intimidation charges arose from the following facts:

The victim was walking home on South Tacoma Way. It was getting dark at the time. Hentz stopped and offered the victim a ride which she accepted. While he was driving, Hentz produced what the victim believed to be a gun. Hentz threatened to shoot her if she did not do as he said. Hentz then drove to his duplex apartment, again warned the victim to obey and took her inside. He had the gun with him at this time.

Hentz attempted to force the victim to dance with him and drink wine. When she resisted, he threw her on the couch, strangled her and then forced her to perform fellatio. He made the victim take off her blouse and he ripped off her bra. He took her jewelry and money. He said he would not let her go because she had seen his license plate. Fearing she was going to die, she ran screaming through the

screen door, as Hentz was preparing to barricade the front door. He chased her through the yard and when she saw a house with a light on she thrust her arm through a window to quickly attract the residents' attention.

When the police arrived at Hentz' apartment, neither he nor the victim's valuables could be found. However, they did find a plastic cap pistol which the victim identified. The pistol was encased in a genuine leather holster designed for .32 and .38 caliber pistols. The pistol is realistic in appearance except for a red plastic piece on the inside of the barrel end. At trial, the victim testified she knew nothing about guns and believed the pistol was real.

A cellmate of Hentz testified that Hentz had admitted the crimes to him. He also testified that Hentz said he had "fooled the cops" and would "beat" the charges against him because, among other things, the police had found the wrong gun. Hentz told his cellmate that he had used a real gun which he had borrowed from a friend at the military base where he was stationed.

Prior to trial, Hentz telephoned the victim threatening to harm her and her child if she did not drop the charges.

The kidnapping and taking the motor vehicle charges arose from an incident occurring 10 days earlier with a different victim wherein Hentz prodded the victim with an apparent gun which the victim felt, but did not see, as he announced, "This is a stickup."

The State did not charge the defendant with being armed with a deadly weapon for penalty enhancement purposes in relation to any of the five charges. Therefore the jury was not instructed that it must find the existence of a gun "in fact."

## II

At issue is the interpretation of the first degree rape statute, RCW 9A.44.040(1), which provides in pertinent part as follows:

A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person

not married to the perpetrator by forcible compulsion where the perpetrator . . .

 (a) Uses or threatens to use a deadly weapon . . .

The Court of Appeals held that this statute required the State to prove that a defendant possessed an actual deadly weapon during the rape. We do not agree with that interpretation of the statute.

 We are to give statutory terms their plain and ordinary meaning. *E.g., Strenge v. Clarke,* 89 Wn.2d 23, 569 P.2d 60 (1977). The plain language of RCW 9A.44.040(1)(a) deals with two distinct concepts: use of a deadly weapon and the threat to use a deadly weapon. Hentz would have us hold that a threat to use a deadly weapon exists only when a defendant points an actual gun at the victim or holds a knife at her throat. He of necessity argues that use of a deadly weapon exists only if a defendant actually shoots, cuts or otherwise injures his victim. Such a proposition is untenable. Pointing a gun at someone is clearly "use" of that weapon, whereas "threat" is defined as the expression of an intention to inflict injury. *Webster's Third New International Dictionary* (1976).

In the instant case, Hentz threatened to "shoot" his victim if she did not cooperate. In addition, he displayed a realistic–looking pistol. Hentz' express verbal threat to "shoot" his victim necessarily implied that he had access to a firearm capable of killing or seriously injuring his victim. We have previously held that a firearm is unambiguously a deadly weapon. *State v. Thompson,* 95 Wn.2d 888, 897, 632 P.2d 50 (1981). In fact the statutory definition of deadly weapon specifically includes any loaded or unloaded firearm. RCW 9A.04.110(6). Thus, Hentz *threatened to use a deadly weapon* in perpetrating the rape in violation of RCW 9A.44.040(1). Since the threat to use a firearm is unambiguously a threat to use a deadly weapon, the trial court's failure to instruct the jury as to the definition of a deadly weapon was not error. The credible *threat* to use a deadly weapon in order to force a victim into submission is the conduct the Legislature intended to prohibit in RCW

9A.44.040(1)(a).

The Court of Appeals, Pearson, J., speaking for the court, has previously held, "First–degree rape does not require use or display of the weapon. Threat of such use is sufficient." *State v. Ingham*, 26 Wn. App. 45, 52, 612 P.2d 801 (1980).[1] Such threat carried with it the implication of death or serious bodily harm to the victim. Although the Court of Appeals in the instant case attempts to distinguish *Ingham*, we determine that the facts of *Ingham* are indistinguishable from those at bar. Both cases involve the *threatened* use of a deadly weapon rather than actual use or possession. In *Ingham* the defendant and an accomplice blinded their rape victim with mace. When the victim began to scream, defendant told his accomplice, "You have that knife, use it." That threat was effective in producing silence even though the victim never saw or felt the knife nor was there any evidence at trial that the assailants were actually armed with a knife.

It would be anomalous indeed to treat a defendant who threatened to shoot, while possessing what appeared to be a gun, more favorably than a defendant who threatened to use a knife where none was displayed.

■ The Legislature has met several times since *Ingham* was published. In fact, it specifically considered the first degree rape statute in Laws of 1981, ch. 136, § 57 and ch. 137, § 36. Since the Legislature has not changed the language "threatens to use a deadly weapon," we may assume that it acquiesced in the *Ingham* court interpretation of the statute. *See Spokane Methodist Homes, Inc. v. Department of Labor & Indus.*, 81 Wn.2d 283, 501 P.2d 589 (1972); *Tipsword v. Department of Labor & Indus.*, 52 Wn.2d 79, 83, 323 P.2d 9 (1958); *Adams v. Building Serv. Employees Local 6*, 197 Wash. 242, 248, 84 P.2d 1021

---

[1]The court in *State v. Ingham,* 26 Wn. App. 45, 612 P.2d 801 (1980) had before it RCW 9.79.170. The Legislature amended the statute and renumbered it to be RCW 9A.44.040. Laws of 1981, ch. 136, § 57 and ch. 137, § 36. The language at issue was not changed.

(1938).

Hentz argues that he should not be convicted of first degree rape because the Legislature in adopting RCW 9A.44.040(1)(a) was only concerned with deterring the actual possession of deadly weapons due to the increased risk to human life such possession entails and thus his conduct is not prohibited by the statute. Hentz, in essence, contends that if his first degree rape conviction is upheld, there will be nothing to deter assailants from carrying and using real deadly weapons in perpetrating rapes. The Legislature in drafting the criminal code was properly concerned with persons possessing deadly weapons during the commission of crimes and acted to deter such conduct. That concern, however, is specifically and clearly addressed by RCW 9.41.025 and RCW 9.95.040, which were not applied to Hentz. Those statutes contain certain penalty enhancement provisions applicable when a defendant is "armed with" or "in the possession of" a firearm or other deadly weapon during the commission of any felony. RCW 9.41.025, the firearm statute, limits a judge's discretion in deferring or suspending sentences. RCW 9.95.040, the deadly weapon statute, limits the discretion of the Board of Prison Terms and Paroles in fixing the minimum term of confinement. The language of these statutes, which is very different from the first degree rape statute, requires the presence of a firearm or deadly weapon *in fact. State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983); *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980). Additionally, the purpose of these statutes is to deter would–be criminals from carrying weapons which have the potential of inflicting injury or death. *See State v. McKim,* 98 Wn.2d 111, 653 P.2d 1040 (1982). Thus, the Legislature chose to deter possession of actual deadly weapons during the commission of crimes by adopting RCW 9.41.025 and RCW 9.95.040 as is apparent from the language and purpose of these statutes; and it did not address that concern in RCW 9A.44-.040(1)(a). Rather, in adopting RCW 9A.44.040(1)(a) the Legislature was concerned both with prohibiting a defend-

ant from *using* and from *threatening* to use a deadly weapon in perpetrating a rape.

The concern regarding a perpetrator of a rape *threatening* to use a deadly weapon is a legitimate one. The believable or credible threat to use a deadly weapon will likely instill a greater fear in the victim than any other type of threat. If the defendant threatens to strangle his victim, she has at least an opportunity to defend herself; but the same does not apply to the threat to use a gun, knife or other deadly weapon. There is very little opportunity, if any, for a victim to defend against a threatened attack with a deadly weapon, especially a gun. This distinction in the types of threats is one difference between first and second degree rape. Both first and second degree rape statutes include an element of forcible compulsion.[2] Forcible compulsion is defined in pertinent part as follows: "threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person . . ." RCW 9A.44.010(5). Although a perpetrator may therefore commit either first or second degree rape by a threat, the Legislature recognized in the first degree rape statute the more serious nature of a credible threat to use a deadly weapon. This type of threat is equally terrifying and effective whether or not the perpetrator actually possesses a deadly weapon, in light of the personal nature of the crime and the inability of a victim to defend against a bullet or other *deadly* force.

### III

Hentz compares the rape statute, RCW 9A.44.040(1)(a) with the robbery statute, RCW 9A.56.200, which specifically provides that a person is guilty of first degree robbery if

---

[2]RCW 9A.44.040 provides that "A person is guilty of rape in the first degree when such person engages in sexual intercourse . . . by forcible compulsion".

RCW 9A.44.050 provides that

"(1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse . . .

"(a) By forcible compulsion".

during the commission of the crime he is "armed with a deadly weapon" or "[d]isplays what appears to be a . . . deadly weapon". He contends that the Legislature would have worded the rape statute in the same fashion as the robbery statute if it had intended the result reached in this case and in *Ingham*. The first degree rape statute is the only section in the criminal code which refers to the threatened use of a weapon. Similarly, the first degree robbery statute is unique in prohibiting the display of what appears to be a deadly weapon. Other sections of the criminal code which refer to weapons do not include provisions similar to the first degree rape or first degree robbery statutes. For example, the first degree burglary statute, RCW 9A.52.020(1)(a), prohibits being "armed with a deadly weapon". The first degree assault statute, RCW 9A.36-.010(1)(a), prohibits "assault[ing] another with a firearm or any deadly weapon". The language of the statutes is too disparate to compare as Hentz attempts to do. The language of each must be considered separately. Although Hentz may have possessed a real gun or a cap pistol, it is clear from the terms of RCW 9A.44.040(1)(a) that the *threat* which he made in perpetrating the rape, coupled with the circumstances surrounding that threat which lent it credibility, is the crux of his conviction for first degree rape.

In addition, we note that there was testimony at trial from Hentz' cellmate that Hentz had used a real gun in committing the rape. The jury was entitled to give credence to this testimony. Hentz argues we should not consider this testimony as he believes the State maintained at trial that the cap pistol would suffice and abandoned the argument concerning a real gun by not submitting a definitional instruction of a deadly weapon to the jury. Contrary to Hentz' recitation of the facts, our perusal of the record establishes that the State did in fact argue that Hentz may have used a real gun and disposed of it along with the victim's blouse and torn bra.

It was for the jury to determine if the threat to use a

deadly weapon had been established under the facts of this particular case. A threat to shoot certainly carries with it that inescapable conclusion. Since one can only be shot with a gun and a gun is unambiguously a deadly weapon, no defining instruction was necessary.

We reverse the Court of Appeals and reinstate Hentz' conviction and sentence for rape in the first degree.

ROSELLINI, STAFFORD, and BRACHTENBACH, JJ., concur.

DORE, J. (concurring)—A toy gun is not a deadly weapon. There was evidence before the jury, however, that the defendant had a real gun when he assaulted and raped the victim. The defendant's cellmate testified that the defendant told him the police had found the wrong gun, and that he had used a real gun which he had borrowed from a friend at the military base where he was stationed when he committed the rape.

A real gun would satisfy the definition of a deadly weapon under RCW 9A.04.110(6). The testimony of the cellmate was sufficient for the jury to find that the defendant possessed a deadly weapon at the time he raped the victim. I would affirm on this basis only.

DOLLIVER, J. (dissenting)—Defendant cites as error the failure of the trial court to give his proposed instruction 6 which defined the term "deadly weapon". I agree. The testimony relied upon by the State was that defendant had used a toy pistol. Even with the testimony as to a real gun referred to in the concurrence, the omission of the proposed instruction allowed the jury to find first degree rape could have been committed without a real deadly weapon. This is error.

RCW 9A.44.040(1) provides:

A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person not married to the perpetrator by forcible compulsion where the perpetrator or an accessory:

(a) Uses or threatens to use a deadly weapon . . .

RCW 9A.04.110(6) defines a "deadly weapon" as

any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, *under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury*[.]

(Italics mine.)

The majority seems to believe a deadly weapon need not actually exist for a person to be convicted of rape in the first degree. I believe it must.

The "gun" in this case was a cap pistol. It is not argued by the majority that the cap pistol was in fact a deadly weapon nor was it. This being so it cannot be a deadly weapon under RCW 9A.44.040(1)(a). RCW 9A.04.110(6) in defining "deadly weapon" for the purposes of the Washington Criminal Code speaks of an instrumentality which "is readily capable of causing death or serious bodily injury". The "threat" to use a "firearm" or "deadly weapon" which does not exist may, in the words of the majority, at page 544, be as "terrifying and effective" as if there were a real weapon. This is not enough under the statute to convict of rape in the first degree. Using the definition of "deadly weapon" provided in RCW 9A.04.110(6), one is only guilty under RCW 9A.44.040(1)(a) if the deadly weapon "*is readily capable* of causing death or serious *bodily* injury". (Italics mine.) This is not and cannot be a characteristic of an imaginary or nonexistent deadly weapon.

When the Legislature chooses to impose the same penalty for a crime regardless of whether the deadly weapon actually exists, it has done so. If, for example, defendant had used a cap pistol or something else appearing to be a deadly weapon in a robbery it would have been robbery in the first degree. RCW 9A.56.200(1) provides:

A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

(a) Is armed with a deadly weapon; or

(b) Displays what appears to be a firearm or other deadly weapon . . .

The first degree rape statute does not provide for what "appears to be a . . . deadly weapon". It simply says the perpetrator must "[use or threaten] to use a deadly weapon". RCW 9A.44.040(1)(a). Recently introduced legislation relative to the first degree rape statute again demonstrates an understanding of the difference between a real deadly weapon and something which only appears to be a deadly weapon (RCW 9A.56.200). See Senate Bill 3009, 48th Legislature (1983); House Bill 31, 48th Legislature (1983) (amending RCW 9A.44.040 to include use or threat of use of *what appears to be a deadly weapon* (italics mine)). This confirms the view that read correctly RCW 9A.44.040(1)(a) does indeed require the deadly weapon to be both real and present at the time of the commission of the crime and not simply to be in the imagination of the perpetrator or the victim.

In arriving at its opinion, I believe the majority misperceives the purpose of deadly weapon statutes. They are not to enhance the punishment of the perpetrator of the crime because the presence of a deadly weapon would increase the fear of, *e.g.*, a rape victim (RCW 9A.44.040(1)(a)) or an assault victim (RCW 9A.36.010(1)(a)), but rather because guns and deadly weapons enhance the possibility that serious injury or death would occur to the victim. When the Legislature chose to place the terror or perception of the victim on an equal footing with the actual physical danger to the victim, it did so. RCW 9A.56.200(1)(a), (b).

One final matter: The majority relies heavily on *State v. Ingham,* 26 Wn. App. 45, 612 P.2d 801 (1980), although it brushes aside the distinction made by the Court of Appeals between *Ingham* and this case. *State v. Hentz,* 32 Wn. App. 186, 191, 647 P.2d 39 (1982). I agree with the *Ingham* court that "[f]irst–degree rape does not require use or display of the weapon. Threat of such use is sufficient." *Ingham,* at 52. However, the deadly weapon, even though unseen by the victim, must have a physical existence. As the Court of

Appeals observed:

> [I]n *Ingham* there was evidence from which a jury could have concluded that the assailants were armed with an actual knife. Here, the toy pistol, relied on by the State, is simply not a deadly weapon.

*State v. Hentz, supra* at 191. It was the State which insisted a toy pistol would be sufficient for its case and resisted an attempt by defendant to obtain an instruction defining "deadly weapon", even though a "deadly weapon" is an element of the crime. A deadly weapon under RCW 9A.44.040(1)(a) may be seen or unseen, but it must be real and have a physical existence. While guilty of first degree robbery, defendant was guilty only of second degree rape.

It is the well established policy of this court to sustain a criminal conviction only when the State proves every element of the crime charged beyond a reasonable doubt. *See, e.g., State v. Loucks,* 98 Wn.2d 563, 656 P.2d 480 (1983); *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). An element of the crime of first degree rape is the use, or threat of use, of a deadly weapon. RCW 9A.44.040(1)(a). The State has charged defendant Hentz with first degree rape but has failed to prove the existence of each and every element of that crime. Therefore, I dissent.

WILLIAMS, C.J., and UTTER and PEARSON, JJ., concur with DOLLIVER, J.

Reconsideration denied June 6, 1983.