[No. 12495-9-III.   Division Three.   January 31, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. FRED D. BRIGHT, *Appellant*.

*Charles S. Dorn* and *Brian C. O'Brien,* for appellant.
*Michael E. McNeff, Prosecuting Attorney,* for respondent.

SCHULTHEIS, J. — After his first trial ended with a hung jury, a second jury found Fred Bright guilty as charged on two counts of first degree rape. He appeals, contending (1) there was insufficient proof that he used or threatened to use a deadly weapon, (2) the court's instructions to the jury were inaccurate, (3) failure to instruct the jury on third degree rape was error, (4) the court erred in admitting and withdrawing certain evidence, (5) prosecutorial misconduct deprived him of a fair trial, (6) as did the accumulation of errors, and (7) he was denied effective assistance of counsel. Mr. Bright also contends Washington's constitutional prohibition against double jeopardy should be interpreted to bar retrial when insufficient evidence in a criminal trial results in a mistrial by hung jury. We reverse.

At approximately 2 a.m. on June 11, 1991, Colville Confederated Tribes Police Officer Fred Bright was on patrol when he encountered a vehicle stopped on Cache Creek Road, a few miles out of Nespelem. Two men were seated in the front of the car and two women were seated in back. Investigating, Officer Bright observed the driver appeared drunk and there were open containers of beer in the car. He ran warrant checks on all four of the car's occupants and discovered there was an outstanding tribal warrant on one of the women, V.T. Officer Bright placed V.T. in the back of

his patrol car. He then asked the male passenger if he had a driver's license and gave him a field sobriety test, which the man passed. Officer Bright directed the man to drive the vehicle, then left with V.T. as his prisoner.

Officer Bright transported V.T. to the tribal police station in Nespelem, where she was booked on the bench warrant. En route, Officer Bright stopped at V.T.'s request at her mother's house to allow V.T. to tell her she had been arrested. Females were not kept at the tribal jail because there were no separate facilities for them, so after V.T. was booked, the female jailer offered to transport her to Okanogan where she would be held until her court appearance. Officer Bright declined the offer, placed V.T. in the back of his patrol car and departed for Okanogan.

Between Nespelem and Okanogan, Officer Bright and V.T. conversed and he stopped to let her get into the front seat. To accommodate the change he moved some articles, including his rifle and jacket, from the front seat to the back seat. They continued their conversation for a short time, then they engaged in one act of oral sex (fellatio) while he was driving and one act of sexual intercourse outside the car after he pulled off onto a side road. They gave widely divergent accounts of the activity.

According to V.T., they were just making small talk before he asked her if she wanted to ride up front and a short time later she moved. He turned on the AM/FM radio. Then Officer Bright started telling her she was beautiful and had large breasts, which he admired. He touched her breasts, first over her clothes then under her shirt and she froze, scared and disgusted. V.T. did not resist or tell him to stop or push him away or struggle. Remembering the times her stepfather had molested her in his car, from the time she was 4 until she was 11, she just looked out the window and wished she was somewhere else. Officer Bright then grabbed her by the back of the neck, pulled her head down into his lap and told her to "suck his cock". Her mouth was forced onto his penis, which was out of his pants, but she neither sucked nor moved her head up and down. He held her there,

making it hard for her to breathe, telling her how beautiful she was. He did not ejaculate. He slowed the car and released her neck; she sat up and moved closer to the passenger door and looked out the window.

According to V.T., Officer Bright then turned off onto a side road, turned his car around and stopped. He rummaged in a container on the seat between them, pulled out a condom, got out of the car, walked to the back for a few moments, then came to her door and opened it. He ordered her to get out of the car, turn around, drop her pants and panties, and not look at him; she obeyed, placed her hands on the car and bent over. He entered her vagina, began moving fast and was quickly done. After she put her panties and pants back on, he told her to get into the car. She got back into the front seat. He went around the back, and after a moment got back into the car, started it up and pulled back onto the highway.

According to Officer Bright, 2 or 3 miles out of Nespelem V.T. reclined in the back seat and spoke softly to him, talking about how nice and soft the seat was and asking if he had ever been back there. He said no. She asked if he would like a chauffeur and he said no, but she could come sit in front and tune the radio if she wanted to. After she moved to the front, she started asking questions and talked about wanting to better herself. She was talking soft, the radio was on and the conversation got intimate. She leaned over and kissed him on the ear and neck. He let her and they talked some more. Then she reached over and began vigorously rubbing his penis through his uniform. She unzipped his pants and caressed his penis. After a few minutes, she took his right hand off the steering wheel and placed it on her breast. He started to pull away and she told him not to stop, she liked it. She performed oral sex on him and suggested he pull over. Eventually he did so. They talked a few minutes, then she said "Come here" or "Let's" — something he took to be an invitation. He took a condom out of his briefcase, got out and put it on, then opened her door. They hugged a little bit and he suggested they wait until another time. She

dropped her Levis, turned around and exposed her buttocks to him and told him he had better get it while he can. He did. Afterwards they got back in the car and pulled back onto the highway.

Officer Bright stopped once more on the way to Okanogan; he moved the articles in the back seat back up front and had V.T. move into the back seat. At the Okanogan jail booking desk, V.T. told the jailer the tribal officer had sexually molested her on the way over.

Officer Bright initially denied having sex with V.T., but then he admitted both sexual contacts and resigned from the tribal police force. On June 12, 1991, he was charged by information with two counts of first degree rape for engaging in sexual intercourse by forcible compulsion where he threatened to use a deadly weapon, a pistol. On September 24 the prosecutor amended the information to allege Officer Bright used or threatened to use a pistol or a rifle. The prosecutor also added a special deadly weapon allegation that Officer Bright was armed with a pistol or rifle when he committed both offenses.

Mr. Bright's first jury trial commenced October 10, 1991, and ended on October 16. Counsel for Mr. Bright excepted to the court's instruction 14,[1] defining "threat". The court instructed the jury on all three degrees of rape. After approxi-

---

[1]Instruction 14 reads:

"Threat means to communicate, directly or indirectly, the intent:

"To cause bodily injury in the future to the person threatened or to any other person;

"To subject the person threatened or any other person to physical confinement or restraint; or

"To accuse any person of a crime or cause criminal charges to be instituted against any person; or

"To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or

"To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition or personal relationships."

The defendant's proposed instruction reads:

"Threaten means to communicate, directly or indirectly, the intent to use a firearm."

mately 2¹/₂ days in deliberation, the jury deadlocked and the court declared a mistrial.

On November 15 the prosecutor amended the information again, dropping the special deadly weapon allegations from both counts. The case was retried to a second jury November 18 to 21, 1991, before another judge. The court instructed the jury on second degree rape as a lesser included offense, but refused to instruct the jury on third degree rape. Defense counsel excepted to the court's refusal to instruct the jury on third degree rape, but did not except to instruction 14. On November 22, 1991, the jury submitted a question to the court:

> In 1st degree rape, when a perpetrator uses or threatens to use a deadly weapon — can the use of the weapon be a non verbal implied threat[?] I.e. can just the prescence [sic] of the gun be considered a threat in 1st degree rape[?]

The court responded:[2] "The attorneys and judge have reviewed your question. You have already been properly instructed on the law. The law does not allow further comment on your question." That same day the jury returned its verdicts: guilty of first degree rape as charged in both counts.

The court denied Mr. Bright's motions for arrest of judgment and for a new trial. On April 21, 1992, the court entered judgment on the verdicts and sentenced Mr. Bright to the top of the standard range, concurrent terms of 102 months on each conviction.

One issue is dispositive of this appeal; therefore, with one exception, we do not reach the other issues raised by Mr. Bright. We agree with Mr. Bright that the evidence is insufficient to support the first degree rape convictions because the State failed to prove he used or threatened to use a deadly weapon.

██ The first degree rape statute, RCW 9A.44.040(1), provides in pertinent part:

---

[2]We note the question is not included in the clerk's papers, although the court's response is.

> A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator . . .
>
> (a) Uses or threatens to use a deadly weapon . . ..

We are to give statutory terms their plain and ordinary meaning. *State v. Hentz*, 99 Wn.2d 538, 541, 663 P.2d 476 (1983). The plain language of RCW 9A.44.040(1)(a) requires Officer Bright to use or threaten to use a deadly weapon. "Pointing a gun at someone is clearly 'use' of that weapon, whereas 'threat' is defined as the expression of an intention to inflict injury. *Webster's Third New International Dictionary* (1976)." *Hentz*, at 541. The victim's own testimony was that Officer Bright did not display, mention, refer to, use or threaten to use either gun. There is no evidence that he expressed any intention to inflict injury.

Washington reformed its rape law in 1975, to focus more on the perpetrator's culpability, his use or threat of force, than on the response of the victim, thereby making the criminalization of rape consistent with that of other violent offenses. Wallace D. Loh, *The Impact of Common Law and Reform Rape Statutes on Prosecution: An Empirical Study*, 55 Wash. L. Rev. 543, 550, 557 (1980); *see also State v. Camara*, 113 Wn.2d 631, 639, 781 P.2d 483 (1989). V.T.'s subjective fear, which may well have been reasonable under the circumstances, does not establish the kind of threat *by the perpetrator* which aggravates second degree rape to first degree rape.

■ Because the State may choose to reprosecute Mr. Bright on charges of second degree rape, we address the availability of third degree rape as a lesser included offense. A lesser included offense instruction is appropriate when: (1) each of the elements of the lesser offense is a necessary element of the offense charged and (2) the evidence supports an inference that the defendant committed the lesser crime instead of the greater crime. *State v. Harris*, 121 Wn.2d 317, 320, 849 P.2d 1216 (1993); *State v. Bergeson*, 64 Wn. App. 366, 369, 824 P.2d 515 (1992).

Under RCW 9A.44.050(1), second degree rape occurs when a "person engages in sexual intercourse with another person: (a) By forcible compulsion". "Forcible compulsion" is defined in RCW 9A.44.010(6) as "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." Under RCW 9A.44.060(1)(a), third degree rape occurs when a person engages in sexual intercourse with another person after the victim's "lack of consent was clearly expressed by the victim's words or conduct". Any consent must be freely given. RCW 9A.44.010(7). The degree of force was thus the distinguishing feature between second and third degree rape in this case. *See State v. McKnight*, 54 Wn. App. 521, 527-28, 774 P.2d 532 (1989); *see also State v. Weisberg*, 65 Wn. App. 721, 829 P.2d 252 (1992).

The court properly instructed the jury on second degree rape because the evidence supports an inference that Officer Bright used forcible compulsion to overcome V.T.'s resistance without using or threatening to use a deadly weapon. The court should have instructed the jury on third degree rape, as well, because the evidence also supports an inference that there was no forcible compulsion, but V.T. did not consent to intercourse and clearly expressed her lack of consent, or if she consented, her consent was not freely given but was coerced by Officer Bright's abuse of the circumstances. The failure to instruct on third degree rape as a lesser included offense was especially prejudicial with respect to the second count (vaginal intercourse outside the car) since there was no physical force, not even a hand on the back of the neck, and V.T. testified she did not resist. It was for the jury to decide, under proper instructions, how much force was used, if any, and whether Officer Bright's abuse of authority constituted forcible compulsion.

We reverse both convictions.

THOMPSON, C.J., and SWEENEY, J., concur.

Reconsideration denied March 15, 1995.

Review granted at 127 Wn.2d 1007 (1995).