916 P.2d 922 (1996)
129 Wash.2d 257
The STATE of Washington, Petitioner,
v.
Fred D. BRIGHT, Respondent.
No. 62831-9.
Supreme Court of Washington, En Banc.
Argued September 27, 1995.
Decided May 16, 1996.
*923 Rick Weber, Okanogan County Prosecutor, Okanogan, for petitioner.
Charles Dorn, Brian O'Brien, Spokane, for respondent.
SMITH, Justice.
The State of Washington petitions for discretionary review of a decision by the Court of Appeals, Division Three, which reversed an Okanogan County Superior Court conviction of Respondent Fred D. Bright on two counts of rape in the first degree. We granted review. We reverse.

QUESTIONS PRESENTED
The questions presented in this case are: (1) whether the mere presence of a firearm on the person of a uniformed and armed police officer while committing rape against a prisoner in custody, without additional evidence of a threat to use the firearm, is sufficient to satisfy the "[u]ses or threatens to use a deadly weapon" element of first degree rape under RCW 9A.44.040(1)(a); and (2) whether the respondent is entitled to *924 attorney fees under RAP 18.1(j) for answering the State's petition for review, where the petition was granted, and where respondent had not been awarded attorney fees by the Court of Appeals.

STATEMENT OF FACTS
At approximately 2:00 a.m. in the dark and early morning of June 11, 1991, Colville Confederated Tribes Police Officer Fred D. Bright (Respondent) arrested Ms. L.[1] on an outstanding tribal warrant for violating a community service requirement imposed upon her conviction for shoplifting. Following the arrest, Respondent transported Ms. L. in his patrol car to a tribal police station in Nespelem, where she was booked on the outstanding warrant. Because the tribal jail did not have separate facilities for women detainees, a woman corrections officer offered to transport Ms. L. to the Okanogan County Jail, where she was to be held until her court appearance.[2] Respondent refused the offer and insisted upon transporting Ms. L. to the Okanogan facility himself in his own patrol car,[3] even though jail rules provided that women prisoners would be transported by women correctional officers.
During the trip from Nespelem to Okanogan, Respondent and Ms. L. started a conversation. After a while, Respondent stopped the automobile and asked Ms. L. if she wanted to move from the back seat to the front seat.[4] Ms. L. responded affirmatively and Respondent allowed her to do so.[5] To make room on the front seat, Respondent moved various articles, including his rifle with bayonet, to the back seat.[6]
Based upon a complaint made by Ms. L. that Respondent had sexually violated her during the trip, Respondent was charged on June 12, 1991 by information filed in the Okanogan County Superior Court with two counts of rape in the first degree for engaging in sexual intercourse by forcible compulsion and threatening to use a deadly weapon, a "pistol."[7] The information was amended by the Prosecuting Attorney on September 24, 1991 to alternatively charge use of either a Glock 9-millimeter handgun or a 7.62-caliber semiautomatic rifle.[8] The amended information also added two special deadly weapon allegations under RCW 9.94A.125.[9] The jury in Respondent's first trial could not reach a verdict and the court, the Honorable James R. Thomas, declared a mistrial on October 16, 1991.
On November 15, 1991, the prosecutor amended the information again, dropping the special deadly weapon allegations.[10] The second amended information in somewhat awkward language charged Respondent [Defendant] Fred D. Bright with two counts of rape in the first degree:

COUNT NO. I

RAPE IN THE FIRST DEGREE
That on or about the 11th day of JUNE, 1991, in the County of Okanogan, State of Washington, then and there being said defendant did engage in oral sexual intercourse by forcible compulsion with ... [Ms. L.], where said perpetrator used or threatened to use a deadly weapon, or what appeared to be a deadly weapon to-wit: a Glock 9mm handgun or a 7.62 caliber semi automatic rifle
All contrary to the form of the Statute 9A.44.040(1), the maximum penalty for which is life in a State penal institution and a fine of fifty thousand dollars, in such cases made and provided and against the peace and dignity of the State of Washington.

*925 COUNT NO. II

RAPE IN THE FIRST DEGREE
That on or about the 11th day of JUNE, 1991, in the County of Okanogan, State of Washington, then and there being said Defendant did engage in sexual intercourse by forcible compulsion with ... [Ms. L.], where said perpetrator used or threatened to use a deadly weapon, or what appeared to be a deadly weapon to-wit: a Glock 9mm handgun or a 7.62 caliber semi automatic rifle
All contrary to the form of Statute 9A.44.040(1), the maximum penalty for which is life in a State penal institution and a fine of fifty thousand dollars, in such cases made and provided and against the peace and dignity of the State of Washington.[11]
The case was retried on November 18, 1991 before a new jury and a new judge, the Honorable Harold D. Clarke. The jury found Respondent "guilty" on both counts of rape in the first degree. On April 21, 1992, the court entered judgment and sentenced Respondent to concurrent terms of 102 months on each count.
What actually happened after Ms. L. moved to the front seat of the patrol car was disputed at trial. Ms. L. testified that shortly after moving to the front seat, Respondent began to fondle her breasts with one hand, while driving with the other.[12] She said this caused her to "feel frozen in [her] spot," and she was at a loss about what she should do.[13] She testified that a short time later Respondent grabbed the back of her neck and forced her to engage in an act of fellatio as he was driving down the highway.[14] She said resistance proved painful and futile, as she was unable to lift her head from Respondent's lap because of the tight grip he had on her neck.[15] According to Ms. L., Respondent then stopped the car on a dirt road, removed what appeared to be a condom from a brief case and got out of the patrol car.[16] She said that a few moments later he opened the passenger door and ordered her to get out, drop her pants and underwear, lean against the car, and face away from him.[17] She testified that, fearing for her safety, she complied with his orders and that Respondent then engaged her in an act of vaginal intercourse.[18]
According to Ms. L., at all times during the encounter Respondent was armed with the handgun he carried in a holster strapped to his waist, and his rifle was on the back seat of the patrol car. Ms. L. stated she was aware of the presence of both weapons during the encounter, but at no time did Respondent directly use or threaten to use either weapon to gain her compliance.[19] However, Ms. L. testified she thought about trying to get away while the patrol car was stopped, but feared Respondent might falsely accuse her of attempting to flee from custody, and possibly even shoot her.[20]
Respondent Bright's testimony about the encounter was quite different from Ms. L.'s. In the police investigation following Ms. L.'s complaint, Respondent denied that anything happened. When later confronted by investigators with incriminating physical evidence against him, he then admitted the two sex acts, but impressed it with his own version. He testified at trial and admitted both acts. But, according to him, his sexual activity with Ms. L. was consensual. Indeed, he testified it was both initiated and invited by Ms. L.,[21] and concluded he simply showed poor judgment by not refusing her advances.[22] He even insisted he was the "rape victim" and *926 that he was seduced by Ms. L. He gave questionable explanations about stains on his service trousers. However, Respondent did not deny he was armed with the handgun and had the rifle within reach during both sexual encounters. He was an able-bodied man 38 years of age in uniform with a service weapon in a holster around his waist. Ms. L. was a young woman prisoner 24 years of age whom he had in custody under arrest.[23]
Respondent appealed his convictions to the Court of Appeals, Division Three. That court reversed, finding insufficient evidence to support a conviction of first degree rape on either charge. The court reasoned that because the State had not proved Respondent had either used or threatened to use a deadly weapon while committing the rapes, one of the statutory elements of first degree rape, as charged, had not been established.[24] On April 11, 1995, the State petitioned this court for discretionary review which we granted on July 12, 1995.

DISCUSSION

FIRST DEGREE RAPE
Where there is ambiguity in the language of a statute, this court is the ultimate authority to determine its meaning and purpose.[25] The court must give effect to the legislative intent[26] and give statutory terms their plain and ordinary meaning.[27] Interpretation of a statute is a question of law reviewed de novo under the error of law standard.[28]
First degree rape is codified in RCW 9A.44.040, which provides in relevant part that:
(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory: (a) Uses or threatens to use a deadly weapon or what appears to be a deadly weapon; or (b) Kidnaps the victim; or (c) Inflicts serious physical injury; or (d) Feloniously enters into the building or vehicle where the victim is situated.[29]
(Emphasis added).
To convict a person of first degree rape, then, the State must prove beyond a reasonable doubt that the person (1) engaged in sexual intercourse (2) by forcible compulsion and (3) under one of the four possible aggravating circumstances. Because elements one and two are not disputed in this appeal,[30] and because there was no additional *927 allegation of kidnapping, serious physical injury or felonious entry, our attention is focused solely upon whether under the evidence in this case Respondent used or threatened to use a deadly weapon, or what appeared to be a deadly weapon, under RCW 9A.44.040(1)(a).
The State contends Respondent made an implied threat to use a deadly weapon while committing the rapes and is thus guilty of rape in the first degree. It is undisputed that Respondent did not actually use a weapon[31] nor expressly threaten to use a weapon. But the State argues that by simply being armed as a law enforcement officer having custody of a prisoner, his victim, he impliedly threatened to use the weapon.[32]
This court has defined "threat," as used in RCW 9A.44.040(1)(a), as "the expression of an intention to inflict injury."[33] Such a threat may be implied, as recognized by this court in State v. Hentz. In that case, the defendant threatened to shoot his victim if she did not submit to sexual intercourse with him.[34] Defendant backed up his threat by displaying a realistic-looking plastic cap pistol.[35] Four justices agreed that this "credible threat to use a deadly weapon" implied that defendant had the means to kill or seriously injure his victim, and was therefore sufficient to meet the requirement of RCW 9A.44.040(1)(a).[36] Similarly, in State v. Coe, four justices concluded "the element of first degree rape requiring use or threat of use of a deadly weapon is satisfied by the threat itself, without evidence of the actual existence of a deadly weapon."[37]
In both Hentz and Coe the court was concerned that a credible threat to use a deadly weapon made by the perpetrator of a rape could as likely render the victim unable to defend against the rape as it would if the perpetrator actually possessed a deadly weapon.[38] It follows from that reasoning that a perpetrator could also satisfy RCW 9A.44.040(1)(a) by suggestively looking at or referring to a weapon actually in the perpetrator's possession, or doing anything else which implied the perpetrator would use it to gain compliance by the victim. Such a credible threat, although not expressly made, would similarly place a victim at a severe disadvantage in defending against the rape.
The State cites State v. Eker in support of its argument on implied threat to use a deadly weapon.[39] In Eker, the defendant was driving a tractor-trailer moving van accompanied by Robert A. Shemalewski and Sammy D. Wright when they picked up Ms. M., a hitchhiker on a Centralia street.[40] Shortly afterwards defendant Gary L. Eker stopped the vehicle so they could obtain drugs from *928 the trailer.[41] Ms. M. and Mr. Shemalewski walked to the back of the trailer, at which point Mr. Shemalewski climbed inside.[42] When he entered the trailer, he appeared to be unarmed.[43] He emerged with a pistol and ordered Ms. M. into the trailer.[44] Once inside, Ms. M. was raped by Mr. Eker and Mr. Wright, while Mr. Shemalewski stood guard outside.[45] The Court of Appeals, Division Two, held "[t]here was ample evidence to support a finding that Eker forcibly compelled Ms. M. to engage in sexual intercourse under an implied threat that a deadly weaponthe gunwould be used if she did not succumb."[46]

SECOND DEGREE RAPE
Rape in the second degree is defined by RCW 9A.44.050 as follows:
(1) A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:
(a) By forcible compulsion;
. . . .
(2) Rape in the second degree is a class A felony.
The trial court properly instructed the jury on the lesser included offense of second degree rape. Under State v. Workman,[47] a defendant is entitled to a jury instruction on a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the charged offense (legal test) and (2) the evidence supports an inference that the defendant committed the lesser offense (factual test).[48] If the charged offense can be committed by alternate means, the first part of the Workman test requires that every element of the proposed lesser offense be a necessary element of all alternate means of committing the greater offense.[49] More simply stated, "if it is possible to commit the greater offense without committing the lesser offense, the latter is not an included crime."[50]
In this case, both parts of the Workman test are satisfied. The legal test is met because it is impossible for a defendant to violate the first degree rape statute, which requires forcible sexual intercourse as a necessary element of the offense, without also violating the second degree rape statute, which simply prohibits sexual intercourse by forcible compulsion.[51] This is true under each of the four alternate means of committing first degree rape because forcible intercourse is required in each instance. The factual test under Workman is also met, since the evidence at trial easily supports a conclusion that Respondent Bright at least committed rape in the second degree.
An examination of all the facts in this caseincluding Respondent's authority as a police officer, the presence of weapons on his person and in his patrol car, his greater size, his use of physical force, and his deliberate choice of a remote location for the sex acts demonstrates sufficient evidence of an implied threat by Respondent to use a deadly weapon to support his conviction of first degree rape under RCW 9A.44.040(1)(a).
There is sufficient evidence to support a jury's finding of guilt where, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found each element of the crime beyond *929 a reasonable doubt.[52] Circumstantial evidence provides as reliable a basis for findings as direct evidence.[53] In particular, a jury may infer criminal intent from a defendant's conduct where it is "plainly indicated as a matter of logical probability."[54]
The particular question here is whether Defendant impliedly threatened Ms. L. with a deadly weapon to meet the requirement that he "use[d] or threaten[ed] to use a deadly weapon" for a conviction of first degree rape under RCW 9A.44.040(1). The Legislature has defined a "threat" for purposes of the criminal code as communicating "directly or indirectly, the intent ... [t]o cause bodily injury in the future to the person threatened or to any other person...."[55] Evidence in this case is sufficient for conviction of first degree rape if Respondent's conduct indicated, as a matter of logical probability, an intent to use his weapons to coerce or compel compliance by Ms. L.[56]
This court has considered the type of conduct providing sufficient evidence of an implied threat with a deadly weapon in State v. Coe[57] and State v. Hentz.[58]Coe and Hentz are factually distinguishable from this case, upholding convictions based upon findings of implied threats where defendants expressly threatened to use deadly weapons that did not in fact exist.[59] But, as in this case, the basis for finding an implied threat depended not exclusively upon the actual presence of a weapon, but upon the totality of circumstances surrounding the crime.
[I]t is clear from the terms of RCW 9A.44.040(1)(a) that the threat which [the defendant] made in perpetrating the rape, coupled with the circumstances surrounding that threat which lent it credibility, is the crux of his conviction for first degree rape.[60]
While in Coe and Hentz the court reviewed the surrounding facts for evidence of the credibility of false threats, in this case we must consider the surrounding facts for evidence of communication of the threat itself.[61]
Respondent Bright evidenced his intent to use his handgun or rifle by his choice to remain armed with the handgun in the holster around his waist, as part of his larger plan to render Ms. L. helpless. In his version of consensual sexual activity, Respondent explained he decided to remain armed because of the difficulty of removing his gun belt.
In rejecting Defendant's claim of consent, the jury could also reject his explanation of his choice to wear his weapon during the sex acts. Instead, the jury doubtless believed Ms. L.'s testimony that Defendant wore his guns as a threat:
[The State:] ... Now, what was your feeling about the guns? Will you share with the jury, please? WhileDuring the sexual contact, and while you were in the patrol car, after you had been assaulted?
[Ms. L.:] Well, I knew that he could use them. I knew they were there. He had a gun on his waist. I didn't feel safe until I was away from him, and his guns, and his car.[62]
*930 There is no dispute that a police officer wears a weapon to indicate the officer's intent to use it to assure compliance with an order. The officer need not expressly threaten the targeted person with the weapon. Both the target and the officer know the threat to use the weapon is implied and inherent in the authority of the police. Generally, we consider as benign a police officer's implied threat to use a weapon. That implied threat remains, and even increases, when a police officer wears weapons during commission of a crime.
By his knowing decision to remain armed while he assaulted and raped Ms. L., Respondent Bright communicated to his victim his intent to use his weapon if she resisted.[63] From the record in this case we can conclude that Respondent Bright deliberately contrived the factors of the guns, his nonregulation transport of a woman prisoner, his choice of a remote locale, and his use of forceall with the intent to create a situation threatening enough to reduce Ms. L. to helplessness.
Respondent Bright testified they engaged in consensual sex. Ms. L. testified he raped her. It is the role of the jury to weigh the credibility of this testimony, along with any surrounding facts and circumstances tending to support or discount the two conflicting accounts.
In a case of first degree rape under RCW 9A.44.040(1)(a), the Legislature has called for the jury as finder of fact to decide not only whether the sexual act was nonconsensual, but also whether defendant coerced the victim with a deadly weapon.
This case personifies the stereotypical rape. Respondent testified he foolishly engaged in consensual sex with an arrested prisoner in his custody, Ms. L. Ms. L. testified he committed forcible rape, threatening her with his authority as a police officer, the evident presence of his service revolver in his holster and a rifle in the back seat of the patrol car, his greater physical size, and the remoteness of the locale where he stopped the car, ordering her to submit to his sexual demand.
The jury obviously believed Ms. L. It properly decided the sum of Defendant's conduct demonstrated an intent to use his weapons to defeat any resistance by his victim.

THIRD DEGREE RAPE
We do not agree with the Court of Appeals that the trial court erred in not instructing the jury on third degree rape. RCW 9A.44.060 declares that:
A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person, not married to the perpetrator....
(Emphasis added).
It is clear from the evidence in this case that Petitioner committed at least rape in the second degree and that third degree rape was not an appropriate consideration for the jury.

ATTORNEY FEES
Respondent asks for award of attorney fees for legal expenses incurred in answering the State's petition for review. RAP 18.1(j), which authorizes this court to grant such an award of fees, provides:

If attorney fees and expenses are awarded to the party who prevailed in the Court of Appeals and if a petition for review to the Supreme Court is subsequently denied, reasonable attorney fees and expenses may be awarded for the prevailing party's preparation and filing of the timely answer to the petition for review.[64]
(Emphasis added).
Respondent was not awarded attorney fees by the Court of Appeals. Nor was the State's petition for review denied by this *931 court. Respondent has not met the conditions required by RAP 18.1(j).[65]
We therefore deny his request for attorney fees.

CONCLUSION
We reverse the Court of Appeals, reinstating the conviction and sentencing of Respondent Fred D. Bright for two counts of rape in the first degree. We deny Respondent Bright's request for attorney fees.
DURHAM, C.J., DOLLIVER, GUY and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.
SANDERS, J., not participating.
MADSEN, Justice dissenting.
The majority opinion in this case upholds Respondent's convictions even though there is no evidence supporting the crime of rape in the first degree. Rape in the first degree requires proof that the defendant used or threatened to use a deadly weapon to compel sexual intercourse. I do agree with the majority that the threat to use a deadly weapon may be communicated indirectly and could include conduct such as suggestively looking at or referring to a weapon possessed by a defendant. However, in this case, the State presented no evidence that Officer Bright suggestively looked at or referred to a deadly weapon, or in any other way communicated an intent to use one. Instead, the evidence shows that Officer Bright's pistol remained in his holster before, during, and after he committed the crimes at issue. The evidence further shows that Bright placed a rifle, one of his weapons, beyond his immediate reach in the back seat of the police car.
At most, the evidence in this case supports a finding that Bright was armed with a deadly weapon when he committed the crimes in this case. By affirming the first degree rape conviction on the evidence presented, the majority has, in effect, created a new category of first degree rape for armed police officers. This result is not authorized by the statute. I therefore dissent.
In my view, the majority can reach its decision only by misreading RCW 9A.04.110(25)(a), defining "threat." The decision either renders the word "communication" meaningless despite its inclusion in the Legislature's definition of "threat," or misinterprets the word "communication" in a way that is contrary to its plain and ordinary meaning.
Each word of a statute must be accorded meaning, for the Legislature is presumed not to have used superfluous words. State v. Fenter, 89 Wash.2d 57, 60, 569 P.2d 67 (1977) (citing State v. Lundquist, 60 Wash.2d 397, 403, 374 P.2d 246 (1962)). "Threat," as defined by the Legislature, means "to communicate, directly or indirectly the intent ... [t]o cause bodily injury...." RCW 9A.04.110(25)(a). Taken together with the definition of first degree rape, the central issue is whether Respondent communicated an intent to cause bodily injury through the use of a deadly weapon.
In this case, it is the communication of intent which is at issue. The majority overlooks the communication element, however, and proceeds as if the issue was the defendant's intent to use a deadly weapon. The majority borrows its analysis from State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980), in which the court stated that a jury may infer specific criminal intent from the conduct of the accused where "it is plainly indicated as a matter of logical probability." Applying that rule to Bright, the majority concludes that "[e]vidence in this case is sufficient for conviction of first degree rape if Respondent's conduct indicated, as a matter of logical probability, an intent to use his weapons to coerce or compel compliance by Ms. L." Majority at 929. Unfortunately, the majority's test does not require the State to prove that the defendant communicated his intent to use a weapon, and, thus, the majority eliminates one of the elements of first degree rape.
*932 In previous cases involving first degree rape, our courts have found that the defendants' or their accomplices' words or actions constituted direct or indirect communication of intent to use a deadly weapon. See State v. Coe, 109 Wash.2d 832, 835-36, 750 P.2d 208 (1988) (the defendant told his victims that he had a knife); State v. Hentz, 99 Wash.2d 538, 539, 663 P.2d 476 (1983) (the defendant produced a gun and threatened to shoot the victim if she did not do as he said); State v. Eker, 40 Wash.App. 134, 136, 697 P.2d 273 (the defendant's accomplice emerged from the trailer displaying a pistol and ordered the victim to go inside), review denied, 104 Wash.2d 1002 (1985); State v. Ingham, 26 Wash.App. 45, 47, 612 P.2d 801 (the defendant told his accomplice in the presence of the victim, "You have that knife, use it."), review denied, 94 Wash.2d 1008 (1980). In the case at bar, the majority, in effect, writes the word "communication" out of the Legislature's definition of "threat."
The majority also violates the principle that words in a statute be given their usual and ordinary meaning when the Legislature has not expressed a contrary intent. Strenge v. Clarke, 89 Wash.2d 23, 28, 569 P.2d 60 (1977). In its ordinary meaning, "communicate" means to make known, inform a person of, or convey information to another. The majority argues that Respondent indirectly communicated his intent to use a deadly weapon through five factors: his authority as a police officer, the presence of weapons on his person and in his patrol car, his greater physical size, his use of physical force, and his deliberate choice of a remote location. Majority at 928.
As a matter of law, however, none of the majority's five factors, separately or taken together, support a finding that Officer Bright communicated an intent to use a deadly weapon to compel intercourse with the victim here. First, the majority inappropriately considers Respondent's authority as a police officer. The majority argues that the police have special authority which carries an implied threat that officers will use firearms to obtain compliance. Majority at 930. In effect, the majority creates a special category of first degree rape for police officers in full uniform which includes a firearm. According to the majority's view of police authority, juries may find a police officer guilty of first degree rape and find a civilian defendant guilty of only second degree rape, even if the defendants said and did the same things while committing the crimes. The Legislature used no language to authorize such uneven application of the statute.
The second factor, the presence of weapons on Officer Bright and in his patrol car, is also an inappropriate consideration. As stated above, police officers have no choice about wearing a weapon; it is part of the uniform. Moreover, other statutes address the mere presence of weapons on a person during the commission of a crime. Specifically, RCW 9.94A.310 and RCW 9.95.040 impose more severe penalties for a defendant who is "armed with" a firearm while committing a felony. RCW 9.94A.310(3)(a) increases the presumptive range for rape in the first degree by 24 months. RCW 9.95.040 limits the discretion of the Board of Prison Terms and Paroles in fixing the minimum term of confinement. A prosecutor must make a special deadly weapon allegation in order to use the enhanced penalty provisions. See State v. Cosner, 85 Wash.2d 45, 50, 530 P.2d 317 (1975).
While the prosecutor in this case initially added a special deadly weapon allegation, he later abandoned it. Clerk's Papers at 207-09. If the prosecutor had not dropped the allegation from both counts of rape, the presumptive range for Officer Bright might have included an additional 24 months to address the presence of the pistol in his holster and the rifle in the back seat of the car.
The remaining three factors are also inappropriate. Although the size of a defendant could be an appropriate consideration in certain circumstances, size is irrelevant to a person's ability to make threats to use a firearm. Similarly, use of physical force is an inappropriate consideration because the first degree rape statute clearly distinguishes between defendants who use nondeadly physical force and those who use or threaten to use deadly force. Finally, criminals often choose remote locations to avoid detection. *933 Respondent Bright's choice of location sheds no light on whether he threatened to use a firearm. As a matter of law, these factors are insufficient to aggravate second degree rape to first degree rape.
The factors listed by the majority do support a finding that Ms. L. found herself in a frightening situation. She was in a remote location. She was in the lawful custody of her attacker, an armed police officer. Ms. L. may have been afraid that the officer might use his pistol or rifle if she tried to escape.[1] However, it is the defendant's conduct, communication of an intent to use a deadly weapon, which must justify the elevation of the crime to first degree rape.
The bottom line is that the majority affirms Officer Bright's conviction for first degree rape because he was armed with a deadly weapon even though first degree rape requires morethat he use or threaten to use a deadly weapon. The majority uses irrelevant factors to bolster a decision which fails to heed the plain language the Legislature used to define the word "threat." This court should reverse the convictions for rape in the first degree.
ALEXANDER and JOHNSON, JJ., concur.
NOTES
[1] Her actual name is not used in order to preserve her privacy.
[2] Verbatim Report of Proceedings, November 19, 1991, at 1005-06.
[3] Id. at 1006.
[4] Verbatim Report of Proceedings, November 20, 1991, at 1305.
[5] Id.
[6] Id. at 1306.
[7] Clerk's Papers at 221-22.
[8] Id. at 207-09.
[9] Id.
[10] Id. at 111-12.
[11] Id.
[12] Verbatim Report of Proceedings, November 20, 1991, at 1200.
[13] Id. at 1201.
[14] Id. at 1202-03.
[15] Id. at 1203.
[16] Id. at 1206.
[17] Id.
[18] Id. at 1207.
[19] Id. at 1253.
[20] Id. at 1205-06.
[21] Id. at 1309-16.
[22] Id. at 1308.
[23] It is an abuse of formal courtroom protocol to address adult participants by first names only or nicknames without courtesy titles. In this case both counsel for the State and defense throughout the trial addressed or referred to the victim, a 24-year-old woman, by her first name only. In his testimony, Respondent Bright even referred to his victim by her nickname only, an arrogant depersonalization of the defenseless prisoner, whom he did not know before arresting her, taking her into custody and subjecting her to two sex acts while transporting her to a distant jail in the dark early morning hours. Participants in all court proceedings are entitled to be addressed with courtesy titles, such as "Ms. Mary Hamilton" or "Ms. Hamilton" instead of "Mary." See Hamilton v. Alabama, 376 U.S. 650, 84 S.Ct. 982, 11 L.Ed.2d 979 (1964), reversing Ex parte Hamilton, 275 Ala. 574, 156 So.2d 926 (1963).
[24] State v. Bright, 77 Wash.App. 304, 309, 890 P.2d 487 (1995).
[25] See State v. Elgin, 118 Wash.2d 551, 555, 825 P.2d 314 (1992).
[26] Id.
[27] See State v. Hentz, 99 Wash.2d 538, 539, 663 P.2d 476 (1983).
[28] See City of Pasco v. Public Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992).
[29] RCW 9A.44.040.
[30] By finding Respondent "guilty" of two counts of first degree rape, the jury necessarily concluded he twice engaged Ms. L. in sexual intercourse by forcible compulsion. See Clerk's Paper's at 65-67. There is sufficient proof of an element of a crime to support a jury's verdict when, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that element beyond a reasonable doubt. State v. Bingham, 105 Wash.2d 820, 823, 719 P.2d 109 (1986). In this case, a rational jury could have found beyond a reasonable doubt that Respondent, by forcible compulsion, twice engaged Ms. L. in sexual intercourse. See generally Verbatim Report of Proceedings, November 20, 1991, at 1176-1281.
[31] A defendant is considered to have "used" a deadly weapon for purposes of RCW 9A.44.040(1)(a) if the defendant either pointed a firearm at the victim, or actually shot at the person with the firearm. See Hentz, 99 Wash.2d at 541, 663 P.2d 476.
[32] Pet. for Discretionary Review at 5.
[33] Hentz, 99 Wash.2d at 541, 663 P.2d 476. See also RCW 9A.04.110(25)(a) (defining "threat" as the communication, directly or indirectly, of an intention "[t]o cause bodily injury in the future to the person threatened or to any other person").
[34] Hentz, 99 Wash.2d at 541, 663 P.2d 476.
[35] Id. at 540, 663 P.2d 476.
[36] Id. at 541, 663 P.2d 476. The fifth justice concurred only on the conclusion there was some evidence the defendant had a real deadly weapon at the time of the rapes. Hentz, 99 Wash.2d at 546, 663 P.2d 476 (Dore, J. concurring).
[37] State v. Coe, 109 Wash.2d 832, 844, 750 P.2d 208 (1988) (Utter and Goodloe, JJ., and Cunningham, J. Pro Tem., concurring with Dolliver, J.; four justices dissented on issues not relevant to this quote).
[38] See Hentz, 99 Wash.2d at 544, 663 P.2d 476 ("This type of threat is equally terrifying and effective whether or not the perpetrator actually possesses a deadly weapon, in light of the personal nature of the crime and the inability of a victim to defend against a bullet or other deadly force.") (Dimmick, J.) and Coe, 109 Wash.2d at 845, 750 P.2d 208 ("[T]he effect upon the victim is the same whether the deadly weapon is actually seen or merely described, by removing the possibility of self-defense.") (Dolliver, J. (citing Hentz, 99 Wash.2d at 544, 663 P.2d 476)).
[39] State v. Eker, 40 Wash.App. 134, 697 P.2d 273, review denied, 104 Wash.2d 1002 (1985).
[40] Id. at 136, 697 P.2d 273.
[41] Id.
[42] Id.
[43] Id.
[44] Eker, 40 Wash.App. at 136, 697 P.2d 273.
[45] Id.
[46] Id. at 139, 697 P.2d 273.
[47] State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978).
[48] Id. at 447-48, 584 P.2d 382.
[49] See State v. Davis, 121 Wash.2d 1, 5-6, 846 P.2d 527 (1993).
[50] State v. Harris, 121 Wash.2d 317, 320, 849 P.2d 1216 (1993).
[51] See RCW 9A.44.040 and RCW 9A.44.050; see also State v. Brown, 127 Wash.2d 749, 754, 903 P.2d 459 (1995) (first part of the Workman test satisfied where defendant was charged with first degree rape, and jury was instructed on second degree rape as lesser included offense).
[52] State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
[53] State v. Gosby, 85 Wash.2d 758, 766, 539 P.2d 680 (1975).
[54] State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980).
[55] RCW 9A.04.110(25)(a).
[56] See RCW 9A.04.110(25)(a); Delmarter, 94 Wash.2d at 638, 618 P.2d 99.
[57] 109 Wash.2d 832, 844, 750 P.2d 208 (1988).
[58] 99 Wash.2d 538, 541, 663 P.2d 476 (1983).
[59] See Coe, 109 Wash.2d at 844, 750 P.2d 208; Hentz, 99 Wash.2d at 541, 663 P.2d 476.
[60] Hentz, 99 Wash.2d at 545, 663 P.2d 476; Coe, 109 Wash.2d at 847, 750 P.2d 208; see also State v. Bowman, 36 Wash.App. 798, 804, 678 P.2d 1273 (credible threat to use gun sufficient where actually possessed toy gun), review denied, 101 Wash.2d 1015 (1984); State v. Ingham, 26 Wash. App. 45, 52, 612 P.2d 801 (threat of knife to silence victim sufficient despite no use or display), review denied, 94 Wash.2d 1008 (1980).
[61] See Coe, 109 Wash.2d at 844, 750 P.2d 208; Hentz, 99 Wash.2d at 541, 663 P.2d 476.
[62] 8 Verbatim Report of Proceedings at 1281 (Nov. 20, 1991).
[63] See Ingham, 26 Wash.App. at 52, 612 P.2d 801 (holding express threat with undisplayed knife to gain victim's silence implied threat of bodily injury to commit rape).
[64] RAP 18.1(j).
[65] See Metzner v. Wojdyla, 125 Wash.2d 445, 452, 886 P.2d 154 (1994) (denying request for attorney fees under RAP 18.1(j) where requesting party had not been awarded attorney fees by Court of Appeals).
[1] Although not at issue in this case, if a victim is particularly vulnerable, or a defendant violates a position of trust, an exceptional sentence might be warranted. See RCW 9.94A.390.