[No. 36032-9-I.   Division One.   July 29, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD K. MAJORS, *Appellant*.

---

[22]*See* 5A K. TEGLAND, WASHINGTON PRACTICE, *Evidence* § 253, at 291 (1989); WRIGHT AND GOLD § 6183, at 455-56.

844

*Eric Broman, Eric J. Nielsen,* and *Nielsen & Acosta,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine* and *Edward Stemler, Deputies,* for respondent.

BAKER, C.J. — Donald Majors appeals his conviction for

attempted first degree kidnapping, which consists of attempting to abduct another with the intent to facilitate the commission of any felony or flight thereafter. Abduction can be proved by evidence that the defendant used or threatened to use deadly force. We must decide if Majors used or threatened deadly force by pointing a BB gun at the victim and threatening to shoot her, when the victim suspected that the weapon was a BB gun. We hold that attempted kidnapping may be established by proof of a threat to use deadly force, intended to accomplish abduction of the victim, whether or not the defendant had the actual capability of inflicting deadly force. Because the crime was *attempted* kidnapping, we further hold that under the facts of this case, the victim's doubts about the ability of the defendant to exert deadly force by the particular weapon he displayed do not prevent a conviction. We reject Majors's remaining arguments, and affirm.

## FACTS

Majors drove up to fifteen year old C.H. as she walked along a road. He slowed and aimed a gun at her through the open passenger window. He told her to get in the car, called her names, and threatened "[t]his is a real . . . gun. Get in the car now or I'll blow your head off." C.H. did not respond. A car driven by the Andersons approached from behind and Majors drove away quickly. C.H. walked to the Andersons' car looking very shocked and frightened, and told them that the driver pointed a gun at her. After looking for C.H.'s brother, the Andersons drove C.H. to her aunt's house where she reported the incident to her aunt and a 911 operator. C.H. gave Majors's license plate number to the operator. Police detective Miller recognized the description of the car, license number, and Majors's name from a previous arrest, and contacted C.H. Approximately twenty minutes after the incident C.H. described the events to Miller. She was "[n]ervous, shaking a little bit, [and] her speech was rapid." She identified the gun as a semi-automatic handgun, but also told him

that she thought the gun was a BB gun because her brother had one and because the bore looked too small to fire a bullet through. The gun was not found, but Majors's girlfriend testified that he owned a BB gun resembling a black semi-automatic handgun.

Before the bench trial, the court heard a number of motions in limine regarding the admission of ER 404(b) evidence. The court reserved ruling on the use of Majors's prior convictions for indecent exposure, warning defense counsel to object as the evidence arose during trial. It admitted testimony that one month before the crime Majors said he wanted to find a girl walking down the road, force her into the car, and force her to submit to anal intercourse.

## USE OR THREAT OF DEADLY FORCE

First degree kidnapping is committed by intentionally abducting another, with the intent to facilitate the commission of any felony or flight thereafter.[1] The abduction element of the crime may be established by proving that the defendant restrained a person by "using or threatening to use deadly force."[2]

The trial court found that Majors both used and threatened deadly force against C.H. Majors argues that pointing a BB gun and threatening to "blow [C.H.'s] head off" is not using or threatening deadly force because a BB gun cannot kill or seriously injure. As Majors points out, statutory and case law definitions of deadly force probably cannot be met by the use of a BB gun in most cases. For example, RCW 9A.16.010(2) defines deadly force in the context of self defense as "the intentional application of force through the use of firearms or any other means reasonably likely to cause death or serious physical injury."

---

[1] RCW 9A.40.020.

[2] RCW 9A.40.010(2).

The Supreme Court has also defined deadly force as force which is "capable of, and entails great risk of, killing."[3]

We acknowledge that a BB gun will not be capable of causing death or serious injury in most situations. But the charge here was not the completed crime of first degree kidnapping. Rather, the charge was *attempted* first degree kidnapping. This distinction is important because Majors's conviction for attempt does not require the use of deadly force. To establish the attempt, the State need only prove that Majors took a substantial step toward completion of the crime. The issue, then, is whether Majors's actions and threat, "[t]his is a real . . . gun. Get in the car now or I'll blow your head off," constituted that substantial step.

In our view, one does not have to have the actual capability to inflict deadly force in order to *threaten* to use it within the meaning of abduction. For instance, abducting someone by threatening to shoot him with a real, but unloaded, gun accomplishes the same illegal purpose as the use of a loaded weapon.[4]

But is a threat to use deadly force which is disbelieved by the intended victim still a threat within the meaning of the statute? We note here that the evidence establishes only that C.H. doubted that the gun Majors aimed at her could shoot bullets, not that she was certain of that fact. Regardless, C.H.'s disbelief that Majors could carry out his threat was merely a fortunate happenstance. It does not in any way negate the fact that Majors took a substantial step toward completion of the kidnapping. We hold that the evidence permitted the court to find that Majors intended to abduct C.H., and that he threatened to use deadly force to accomplish that end.

---

[3]*State v. Clarke*, 61 Wn.2d 138, 142, 377 P.2d 449 (1962).

[4]*See State v. Hentz*, 99 Wn.2d 538, 663 P.2d 476 (1983), a 4-1-4 decision in which four Justices opined that actual deadly capability is not required to prove threatened use of a deadly weapon under the first degree rape statute.

## EXCITED UTTERANCE

Over defense objection, the trial court permitted police officer Miller to repeat statements made to him by C.H. under the "excited utterance" exception to the hearsay rule. This exception allows the use of statements made while under the stress of events surrounding the crime.[5] C.H. described the circumstances of the crime, including Majors's automobile license number, to Miller approximately twenty minutes after the incident but after first speaking to the Andersons, her aunt, and the 911 operator. When she spoke to Miller, C.H. was "[n]ervous, shaking a little bit, [and] her speech was rapid."

To qualify for admissibility as an excited utterance, it is not enough that the declarant spoke with the witness while under the influence of the startling event. The trial court must also focus on whether there has been any chance of "fabrication, intervening influences, or the exercise of choice or judgment."[6] Here, the court's ruling was supported by evidence of C.H.'s "visibly shaken" demeanor, her youth, and the relatively small amount of time between the incident and the declaration. On the other hand, the value of the hearsay testimony was reduced by the opportunity for intervening influences. In those twenty minutes, C.H. spoke with the Andersons, rode with them to look for her brother, then drove to her aunt's house, where she spoke with the aunt and the 911 operator.

We review the trial court's decision to admit the evidence under an abuse of discretion standard. We do not find an abuse of discretion here, particularly because this was a bench trial in which the court is presumed to give

---

[5]ER 803(2).

[6]*State v. Bryant*, 65 Wn. App. 428, 433, 828 P.2d 1121, *review denied*, 119 Wn.2d 1015 (1992).

evidence its proper weight.[7] Furthermore, the statement was cumulative of other testimony, including C.H.'s own, and the Andersons', who witnessed C.H. speaking to Majors, saw her frightened and shocked demeanor, and recorded Majors's license plate number.

## PRIOR ACT

■ On direct examination, Officer Miller revealed that he had previously arrested Majors for indecent exposure. Majors contends that this testimony violated ER 404(b), which generally excludes evidence of the defendant's prior wrongs. The parties discussed prior crimes evidence during pretrial motions, but the trial court reserved its final ruling and admonished counsel to object to the evidence as it arose at trial. Majors failed to do so. We cannot address issues that were not raised before the trial court. The issue is therefore not sufficiently preserved for review.

## EXCLUSION OF PRIOR STATEMENT OF DEFENDANT

■ Majors argues that he should have been allowed to elicit a statement made to Officer Miller during his arrest for indecent exposure. Majors allegedly told the officer that he tends to expose himself when he gets "stressed out." Majors contends that the statement was relevant because it would negate any inference that he intended to commit a more serious crime than indecent exposure. Assuming arguendo that the trial court could have allowed the evidence, any relevance was at best tenuous, and the court did not abuse its discretion in excluding it.

## PRIOR STATEMENT OF INTENT

■ Approximately one month before the incident with C.H., Majors told his girlfriend that he intended to find a girl walking along the road, force her into the car, and

[7]See State v. Melton, 63 Wn. App. 63, 68, 817 P.2d 413 (1991), review denied, 118 Wn.2d 1016 (1992).

make her submit to anal sex. The trial court admitted this statement as relevant evidence of Majors's intent to commit a sexual offense against C.H. Majors argues that the trial court erred under ER 402, 403, and 404(b) because the statement was irrelevant, or at least more prejudicial than probative. We hold that the evidence was relevant to the issue of Majors's intent, and that the trial court did not abuse its discretion in admitting it.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In a pro se supplemental brief, Majors claims ineffective assistance of appellate counsel.[8] Majors argues that preparation of the "deadly force" argument in his pro se brief was hindered by his attorneys' failure to give him access to their work product for his research. He explains that the outcome of his appeal would have been different if he had the opportunity to present an argument based on *State v. Hentz*,[9] to the effect that brandishing a BB gun is not a threat of deadly force. But Majors did present this argument in both his opening brief and his supplemental pro se brief. We therefore reject his claim of ineffective assistance.

Affirmed.

WEBSTER and BECKER, JJ., concur.

Review denied at 130 Wn.2d 1024 (1997).

---

[8]The remainder of Majors's pro se brief is devoted to citation of federal authority for the arguments presented in his opening brief. We are not persuaded or bound by these authorities.

[9]99 Wn.2d 538, 663 P.2d 476 (1983).