# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48710-1-II |
| Respondent, | |
| v. | |
| GEORGE ANTONIO WRIGHT, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Gregory Antonio Wright appeals his convictions for first degree kidnapping and attempted second degree assault, arguing that the State presented insufficient evidence to establish the essential element of "abduction" in the charge of kidnapping. In a Statement of Additional Grounds (SAG), Wright asks us to review whether the State presented sufficient evidence to convict him of attempted second degree assault.

We hold that Wright's sufficiency challenges to his convictions fail. Therefore, we affirm.

FACTS

Kristina Nystrom was a mental health therapist who provided therapy to inmates in the Clark County Jail. Nystrom met with Wright in the evening of January 13, 2015, in a private treatment room. A jail guard escorted Wright to the treatment room but did not enter the treatment room with Wright and Nystrom. The treatment room had chairs for the counselor and patient, "a big, heavy desk," an exam table, and various medical books and supplies. 3 Verbatim Report of

Proceedings (VRP) at 317. The room had no windows, but had "a heavy metal door" that was propped open and would automatically lock when closed. 3 VRP at 318. Across the hallway from the treatment room was a guard station.

Wright sat in the chair next to the door and talked with Nystrom for 10 to 15 minutes. Without warning, Wright angrily said something that sounded like, "Well, what can you do for me then" and stood up. 3 VRP at 324. "[I]n one motion[, Wright] kicked the doorstop out, pushed the door closed, and hit [Nystrom] in the face" with a closed fist. 3 VRP at 325. The punch knocked Nystrom to the ground.

Wright was positioned between Nystrom and the door. When Nystrom pushed herself back up, Wright came at her "with his hands and tried to put them around [her] neck." 3 VRP at 327. Nystrom said, "[H]e ended up putting his hands around my neck," but she "squirmed backwards and away." 3 VRP at 327. Wright "started pulling the desk in front of the door to block the door from being opened." 3 VRP at 327. Nystrom moved behind the desk to push it away, screaming loudly. Wright then reached over the desk for Nystrom, grabbed her sweater by the neck, and tried to pull her across the desk, stretching the neck of her sweater. At that point, Nystrom could hear the guards coming, but Wright had managed to move the desk in front of the door.

Officer Duncan Paddy was on duty at the guard station across the hall from the treatment room with several other law enforcement personnel when he heard Nystrom screaming. Initially, Officer Paddy and the other law enforcement personnel could not tell where the screaming was coming from, but they soon isolated the direction and realized the door to the treatment room was closed. It was not normal for the door to the treatment room to be closed. Officer Paddy knew the door would be locked, and he used the keys he had with him to unlock the door. He tried opening

2

the door slowly, but there was enough resistance that the door pushed closed again. Officer Paddy then hit the door with a lowered shoulder and the door "flew open." 3 VRP at 371.

Upon entry, Officer Paddy lunged across the desk to secure Wright. Wright did not resist, and Officer Paddy was able to secure him against the exam table. Four other law enforcement personnel entered the room behind Officer Paddy. Officer Paddy testified that the time it took him to respond was no more than 15 seconds.

Although Wright was not successful in cutting off Nystrom's trachea or her air passage, he touched her neck "forcefully" with "[t]he palm of his hand and his fingers and thumb. 3 VRP at 340. This contact left a bruise on Nystrom's neck.

Nystrom testified that she was afraid for her life, and "I was so afraid I wet myself." 3 VRP at 326. Nystrom was not sure how long the entire incident lasted, but she estimated about 30 seconds.

Wright was charged by amended information on February 1, 2016, with first degree kidnapping and attempted second degree assault. After trial, the jury found Wright guilty on both counts. The jury also found by special verdict that in committing kidnapping in the first degree, Wright intended to facilitate the commission of second degree assault or flight thereafter.

The trial court noted on the felony judgment and sentence that the attempted second degree assault conviction merged with the first degree kidnapping conviction. Wright was sentenced to 186 months. Wright appeals.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Wright argues the State presented insufficient evidence to convict him of first degree kidnapping because the evidence failed to establish that his actions constituted an "abduction" of Nystrom.  Br. of Appellant 5.  In a Statement of Additional Grounds (SAG), Wright requests that we review the sufficiency of the evidence to convict him of attempted second degree assault.  We hold that sufficient evidence supports Wright's conviction on both counts.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt.  *State v. Houston-Sconiers*, 188 Wn.2d. 1, 15, 391 P.3d 409 (2017).  All reasonable inferences from the evidence are drawn in favor of the State and interpreted "most strongly" against the defendant.  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  A claim of insufficiency "'admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'"  *Houston-Sconiers*, 188 Wn.2d. at 15 (quoting *Salinas*, 119 Wn.2d at 201).  Circumstantial and direct evidence are equally reliable.  *State v. Moles*, 130 Wn. App. 461, 465, 123 P.3d 132 (2005), *review denied*, 157 Wn.2d 1019 (2006).  We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.  *State v. Fiser*, 99 Wn. App. 714, 719, 995 P.2d 107, *review denied*, 141 Wn.2d 1023 (2000).

1.   First Degree Kidnapping

Wright argues that the evidence failed to show that his actions constituted "abduction" because the evidence did not show that he "secreted or held Nystrom in a place she was not likely to be found" nor did the evidence show that he "restrained Nystrom by use or threatened use of deadly force." Br. of Appellant at 5-7. We hold that Wright's challenge fails because the evidence presented was sufficient for any rational trier of fact to find beyond a reasonable doubt that Wright restrained Nystrom with threatened use of deadly force, thereby establishing the essential element of "abduction" to the kidnapping charge. *Houston-Sconiers*, 188 Wn.2d. at 15.

a.   Legal principles

A person is guilty of kidnapping in the first degree when he or she "intentionally abducts another person with intent: . . . (b) [t]o facilitate commission of any felony or flight thereafter; or (c) [t]o inflict bodily injury on him or her." RCW 9A.40.020(1). A person is abducted when he or she is restrained "by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1). *See also State v. Berg*, 181 Wn.2d 857, 868, 337 P.3d 310 (2014) ("abduction can be proved in one of two ways: (1) restraint by secreting or holding a person where she is not likely to be found or (2) restraint by means of deadly force or threat of deadly force."). A person is restrained where his or her movements are restricted "without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). "Deadly force is force which is the intentional application of force through the use of firearms or any other means reasonably

5

likely to cause death or serious physical injury." CP at 162 (unchallenged Jury Instruction 10a defining deadly force).

b. Restrained by Threatened Use of Deadly Force

Wright argues that the evidence presented did not establish "abduction" because the evidence did not show that he restrained Nystrom with use or threatened use of deadly force. Br. of Appellant at 5. In support, Wright points to what he did not do—he did not use a firearm, he did not restrict Nystrom's airway, and he only inflicted scrapes and bruises. We disagree.

The fact that Wright did not use a firearm does not matter, as "one can threaten or use deadly force during a kidnapping without using a deadly weapon." *State v. Lopez*, 142 Wn. App. 341, 348–49, 174 P.3d 1216 (2007), *review denied*, 164 Wn.2d 1012 (2008). Nor does it matter that he only inflicted scrapes and bruises and did not successfully restrict Nystrom's airway, as "one does not have to have the actual capability to inflict deadly force in order to *threaten* to use it within the meaning of abduction." *State v. Majors*, 82 Wn. App. 843, 847, 919 P.2d 1258 (1996), *review denied*, 130 Wn.2d 1024 (1997).

Here, viewed in the light most favorable to the State, the evidence showed that Wright closed the door causing it to lock and impede the officers on duty from coming to Nystrom's aid, he stood between Nystrom and the door, and he moved the desk in front of the door to further impede the officers' assistance. The evidence also showed that Wright (1) punched Nystrom in the face; (2) grabbed her neck with the palm, thumb, and fingers of his hands with enough force to leave bruising on her neck and she had to "squirm[ ] backwards and away" to get free; and (3) continued to reach for her neck, stretching the neck of her sweater. 3 VRP at 327. The evidence further showed Nystrom was afraid her life was in jeopardy. When viewed in the light most

favorable to the State, this evidence was sufficient to permit any rational trier of fact to find that Wright restrained Nystrom with threatened use of deadly force beyond a reasonable doubt. *Houston-Sconiers*, 188 Wn.2d. at 15; *Berg*, 181 Wn.2d at 868.[1]

2.      Attempted Second Degree Assault

In a SAG, Wright requests that we review the sufficiency of the evidence to convict him of attempted assault in the second degree. We hold that the State presented sufficient evidence to convict Wright of attempted second degree assault.

"A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). A person is guilty of assault in the second degree if he or she, "[a]ssaults another by strangulation or suffocation." RCW 9A.36.021(1)(g). "'Strangulation' means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe." RCW 9A.04.110(26).

---

[1] Wright also contends that the evidence did not establish "abduction" because the evidence did not show that he "secreted or held Nystrom in a place she was not likely to be found." Br. of Appellant at 5-6. As explained above, "abduction can be proved in one of two ways: (1) restraint by secreting or holding a person where she is not likely to be found or (2) restraint by means of deadly force or threat of deadly force." *Berg*, 181 Wn.2d at 868. Thus, because we hold that the evidence was sufficient to permit any rational trier of fact to find that Wright restrained Nystrom with threatened use of deadly force beyond a reasonable doubt, we do not address this argument.

Here, the evidence showed that Wright grabbed Nystrom's neck with the palm, thumb, and fingers of his hands with enough force that he left bruising on her neck. From the evidence describing Wright's actions and Nystrom's bruising, a rational trier of fact could reasonably infer that Wright compressed Nystrom's neck and obstructed sufficient blood flow to cause bruising.

The evidence further showed that after Nystrom "squirmed backwards and away," Wright continued to reach for her neck, causing the neck of her sweater to stretch. 3 VRP at 327. From this evidence, a rational trier of fact could reasonably infer that Wright intended to strangle Nystrom.

Therefore, admitting the truth of this evidence and the reasonable inferences that can be drawn from it in favor of the State, any rational trier of fact could find beyond a reasonable doubt that Wright intended to compress Nystrom's neck and obstructed, or intended to obstruct, her blood flow or ability to breathe. RCW 9A.04.110(26), RCW 9A.28.020(1), RCW 9A.36.021(1)(g); *Houston-Sconiers*, 188 Wn.2d. at 15. We hold that the State presented sufficient evidence to convict Wright of attempted second degree assault.

B.    APPELLATE COSTS

Wright requests that we decline to impose appellate costs against him if the State prevails on this appeal and makes a proper request. The State responds by stating that it does not intend to seek costs if it prevails on this appeal. Accordingly, appellate costs will not be imposed.

No. 48710-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, A.C.J.

_____
Sutton, J.