# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DAWSON CONSTRUCTION, LLC, | No. 84506-3-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | |
| Respondent. | |

FELDMAN, J. — Dawson Construction, LLC, appeals a Board of Industrial Insurance Appeals (Board) Decision and Order affirming a Department of Labor and Industries (Department) Corrective Notice of Redetermination No. 317958834 following a workplace accident. We reject Dawson's arguments and affirm.

I

In July 2019, Dawson was working on what was known as the Mahogany Project in Bellingham, Washington, constructing and installing wet utilities such as storm drains, pipes, sidewalks, and parking. Part of this work involved Tucker Rojas, a laborer, setting up a laser to check the grade and elevation while another worker, Dean Teskey, used an excavator to move or add material based on Mr. Rojas's directions. Mr. Teskey would then load the excess material into a

dump truck operated by Skyler Isaacson,[1] who would take the material to a dumpsite.

On July 23, 2019, while driving a dump truck without an operable reverse alarm, Skyler backed into Mr. Rojas, killing him. When the accident occurred, Skyler was relying on Mr. Teskey honking the excavator horn to tell him when to stop backing up because the dump truck did not have a backup camera or other equipment besides mirrors to see behind it. Skyler was 18 at the time and had been recently hired by Dawson. While he had received some on-the-job training from his father Joshua, he was not aware that the truck was required to have an operable backup alarm.

Relevant here, the Department cited Dawson for violating WAC 296-155-610(2)(f)(i), which requires employers to ensure their dump trucks have an operable backup alarm (violation 1-1); WAC 296-155-035(2), which requires employers to permit only employees qualified by training or experience to operate equipment and machinery (violation 1-2); and WAC 296-155-610(2)(l), which requires employers to inspect all vehicles at the beginning of each shift to ensure all parts and accessories, including safety devices, are in safe operating condition (violation 1-3).

Dawson appealed to the Board, but did not dispute violations 1-1 and 1-3. Instead, Dawson disputed violation 1-2 and argued that violations 1-1 and 1-3 should be grouped to avoid duplicative citations. The industrial appeals judge (IAJ) upheld violation 1-2, finding that Skyler did not meet the definition of

---

[1] Because both Skyler Isaacson and his father, Joshua Isaacson, will be discussed, we refer to each by their first name.

"qualified" in WAC 296-155-012. The IAJ also rejected Dawson's argument that violations 1-1 and 1-3 should be grouped, as well as its arguments regarding the admissibility of evidence of Mr. Rojas's death and expert witness testimony describing commercial driver's license (CDL) standards relating to backup alarms. Dawson petitioned for review by the Board, which adopted the IAJ's decision and findings. Dawson then appealed to the superior court, which affirmed the citation. Dawson now appeals to this court.

II

A.      Violation 1-2

Dawson argues that the Board's finding that Skyler was not qualified to operate a dump truck (violation 1-2) is not supported by substantial evidence. We disagree.

This issue is governed by the definition of "qualified" in WAC 296-155-012, which defines a "qualified" employee as "[o]ne who, by possession of a recognized degree, certificate, or professional standing, or who by extensive knowledge, training, and experience, has successfully demonstrated their ability to solve or resolve problems relating to the subject matter, the work, or the project." We review the Board's decision regarding this issue based on the record before the agency; we will not reweigh evidence. *Dep't of Labor & Indus. v. Tradesmen Int'l, LLC,* 198 Wn.2d 524, 534, 497 P.3d 353 (2021). We review findings of fact to determine whether substantial evidence supports them. *Id*. "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Mowat Constr. Co. v. Dep't of Labor & Indus.*, 148 Wn. App. 920, 925, 201 P.3d 407 (2009).

Substantial evidence supports the Board's finding that Skyler was not a "qualified" employee. Skyler lacked a recognized degree, certificate, and professional standing. He had no prior construction experience, and the only relevant driving experience he had was driving a truck during summer vacation and intermittent experience with heavy farm vehicles. His only on-the-job training lasted about an hour. His father Josh showed him how to operate the dump truck and explained the differences between it and the other trucks Skyler had operated. Skyler then observed Josh operate the dump truck for a few loads, and Josh observed Skyler for two or three loads. At the time of the accident, Skyler had been working for about a week, making about 30 trips a day, and lacked knowledge of the relevant WISHA[2] regulations that governed how he was supposed to operate the truck. Together, these facts can convince a fair-minded person that Skyler was not a "qualified" employee as defined in WAC 196-155-012 because his knowledge, training, and experience were not extensive and he had not shown his ability to solve or resolve problems arising during the operation of the dump truck.

Dawson argues that the Board's reliance on the fact that Skyler did not know that backup alarms were required on dump trucks is legally erroneous because knowledge of a backup alarm is not specifically required by WAC 296-155-035(2) nor is it an industry standard to require this knowledge. This argument misinterprets the Board's decision. The Board explained that "[t]he purpose of the WAC provision at issue is to at least in part accomplish the goal of

_____

[2] As used herein, "WISHA" refers to the Washington State Industrial Safety and Health Act of 1973, ch. 49.17 RCW.

WISHA to enhance worker safety." The Board was concerned with Skyler's ability to operate the dump truck safely, which required knowing and following the relevant WISHA regulations. His lack of knowledge that the dump truck needed an operable backup alarm is therefore evidence that he did not have enough knowledge of the safety requirements to be qualified.

Dawson also faults the Board for giving insufficient weight to the evidence that Skyler did have some prior experience and training. The Board's decision explains why the evidence of Skyler's previous experience did not persuade it that Skyler was qualified, stating, "it is apparent Skyler could physically operate a dump truck. . . . However, this is not the issue here. . . . Rather, the issue is whether Skyler was qualified to operate the dump truck in a safe manner." The Board's reasoning makes it clear that it did not give great weight to evidence of Skyler's previous experience because the evidence did not speak directly to Skyler's ability to operate the dump truck safely. There is substantial evidence to support the Board's finding that Skyler was not a "qualified" employee, and we do not reweigh that evidence against evidence the Board found less persuasive.

B.      Grouping of Violations 1-1 and 1-3

Next, Dawson argues that the Board abused its discretion when it did not group violations 1-1 and 1-3. We disagree.

To determine whether violations should be grouped, the Board used the analytic framework set forth in *In re Walkenhauer & Assocs.,* No. 91 W088, 1993 WL 453607 (Wash. Bd. of Indus. Ins. Appeals Sept. 7, 1993).[3] In deciding

---

[3] Both parties agree that the analytical framework in *Walkenhauer* governs the grouping issue here.

whether to group violations, the Board in *Walkenhauer* explained that "[i]t is useful to consider the problem from various perspectives to determine whether the second violation . . . is necessarily included in the first." *Id.* The Board then identified the following three considerations:

> [1] Do the two violations allegedly committed by the employer arise out of the same incident?
>
> [2] Do the violations address the same hazard?
>
> [3] Does the violation of the first standard . . . logically incorporate a violation of the second standard . . . ? In other words, by violating the first standard will the second standard, by definition, be violated as well? Are the conditions that gave rise to multiple violations one and the same?

*Id.* As these considerations make clear, the purpose of grouping is to avoid penalizing an individual or entity multiple times for what is essentially "one and the same" violation. *Id.* We review the Board's decisions regarding penalties for abuse of discretion. *Potelco, Inc. v. Dep't of Labor & Indus.*, 7 Wn. App. 2d 236, 253, 433 P.3d 513 (2018).

The Board did not abuse its discretion when it determined that violations 1-1 and 1-3 did not address the same hazard—failing the second *Walkenhauer* consideration. WAC 296-155-610(2)(l) (violation 1-1) is meant to address many general hazards and has broad application beyond any one hazard or circumstance, while WAC 296-155-610(2)(f)(i) (violation 1-3) addresses the specific hazard of backing the dump truck into or over someone. The difference in scope and specificity between the two regulations shows that they address different hazards and can therefore be treated as separate violations under the *Walkenhauer* framework. This, by itself, provides a tenable basis to conclude, as

the Board did, that grouping was not required.

Dawson focuses on the third *Walkenhauer* consideration and argues that grouping is required because curing violation 1-1 would necessarily cure violation 1-3. Stated differently, Dawson claims that if there had been an operable backup alarm, then it would necessarily have performed an adequate safety test. But the relevant consideration in *Walkenhauer* asks whether violating one standard *definitionally* violates the second standard. In this case, violating WAC 296-155-610(2)(l) does not *definitionally* violate WAC 296-155-610(2)(f)(i) because a safety inspection could still be inadequate even if there is an operable backup alarm. Dawson's argument thus misapplies the third *Walkenhauer* consideration. And even if Dawson were correct with regard to this consideration, the second *Walkenhauer* consideration—which Dawson largely ignores—is sufficient to establish that the Board did not abuse its discretion when it did not group violations 1-1 and 1-3.

C.    Evidentiary Rulings

Lastly, Dawson argues that the Board abused its discretion when it (i) admitted evidence of Mr. Rojas's injury and death and (ii) did not admit the testimony of Wesley Curtis, Dawson's expert witness regarding CDL standards. The Board's evidentiary decisions are reviewed for abuse of discretion and "will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Bayley Constr. v. Dep't of Labor & Indus.,* 10 Wn. App. 2d 768, 795-96, 450 P.3d 647 (2019) (quoting *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999)). There is no such abuse of discretion here.

The Board did not abuse its discretion by admitting evidence of Mr. Rojas's injury and death because background information is relevant and admissible. Background information "complete[s] the story . . . by proving its immediate context of happenings near in time and place" and is generally both relevant and admissible. *State v. Grier*, 168 Wn. App. 635, 646, 278 P.3d 225 (2012) (quoting *State v. Tharp*, 27 Wn. App. 198, 204, 616 P.2d 693 (1980), *aff'd*, 96 Wn.2d 591, 637 P.2d 961 (1981)), *see also* Relevant evidence defined— Stipulations and undisputed issues, 5 KARL B. TEGLAND & ELIZABETH A. TURNER, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 401.6 (6th ed.) ("it is clear that undisputed background information is within the definition of [relevant evidence in] Rule 401"). The Department investigation that led to Dawson's citation occurred because of Mr. Rojas's death; thus, his death is necessary background information to complete the story of the violations.

Dawson also argues that even if evidence of Mr. Rojas's death was relevant, it should have been excluded because it was unfairly prejudicial. *See* ER 403. The danger of unfair prejudice is reduced when a judge serves as the fact finder. This is because "a trial judge, due to his or her experience and training, is in a better position than jurors to identify and focus on the probative quality of evidence . . . and to disregard the prejudicial aspects" of the evidence. *State v. Jenkins*, 53 Wn. App. 228, 236-37, 766 P.2d 499 (1989); *see also State v. Majors*, 82 Wn. App. 843, 848-49, 919 P.2d 1258 (1996) (court in bench trial is presumed to give evidence its proper weight). Just as a judge is presumed to focus on the probative value of evidence, it is logical to presume that the Board would not be unfairly influenced by evidence that could arouse a strong

emotional response. The Board did not abuse its discretion by admitting this evidence.

Nor did the Board abuse its discretion by excluding the testimony of Dawson's expert witness, Wesley Curtis, regarding the industry standards for CDLs. Dawson argues that because WAC 296-155-035(2) does not provide any specific guidance on what training, knowledge, and experience are required to show that a worker is "qualified," the CDL standards can provide guidance by analogy and should have been considered. But the term "qualified" is specifically defined in WAC 196-155-012, which is quoted above. Because WISHA provides the relevant safety regulations, Mr. Curtis's testimony regarding CDL standards was irrelevant. The Board's decision was not based on untenable grounds nor made for untenable reasons; therefore, there was no abuse of discretion.

III

We affirm the Board's decision and, accordingly, affirm the trial court's decision on judicial review.

Feldman, J.

WE CONCUR:

Brennan, J.                    Hazelrigg, ACJ